# Illinois Official Reports

## Appellate Court

*Hamilton v. Hastings*, 2014 IL App (4th) 131021

| | |
|---|---|
| Appellate Court Caption | WARREN G. HAMILTON, Plaintiff-Appellant, v. BLAKE C. HASTINGS, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-13-1021 |
| Filed | July 28, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although plaintiff appealed from the denial of his motion for a new trial in an action for the injuries he suffered when defendant's truck struck plaintiff's car on an icy and snow-covered road, he was essentially asking the appellate court to enter a judgment *n.o.v.*, and even though he did not renew his request for a judgment *n.o.v.* in his posttrial motion and even though the appellate court would have been justified in declining to consider the denial of the posttrial motion due to plaintiff's failure to clearly brief the issue, the issue would be considered in view of defendant's election to brief that issue, and based on the evidence, the jury could have found that plaintiff's injuries were not caused by the accident, but by past injuries and degeneration due to aging, and the trial court did not abuse its discretion in denying a new trial on the ground that the jury's verdict was not against the manifest weight of the evidence. |
| Decision Under Review | Appeal from the Circuit Court of Coles County, No. 11-L-76; the Hon. Teresa K. Righter, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

H. Kent Heller (argued), of Heller, Holmes & Associates, P.C., of Mattoon, for appellant.

Michael K. Radloff (argued), of Ryan, Bennett, Radloff & O'Brien, of Mattoon, for appellee.

Panel

JUSTICE POPE delivered the judgment of the court, with opinion. Presiding Justice Appleton and Justice Harris concurred in the judgment and opinion.

## OPINION

¶ 1  In October 2011, plaintiff, Warren G. Hamilton, filed a complaint against defendant, Blake C. Hastings, alleging on January 10, 2010, defendant negligently lost control of his truck and struck plaintiff's vehicle, causing damage. After the jury found in favor of defendant, plaintiff filed a posttrial motion seeking a new trial. The trial court denied the motion, and plaintiff appeals.

¶ 2  On appeal, plaintiff requests this court to enter a verdict in his favor as to defendant's liability and remand for further proceedings on damages only. We conclude plaintiff forfeited this issue because he did not request a judgment notwithstanding the verdict (judgment *n.o.v.*) in his posttrial motion. Defendant has briefed the issue of whether the trial court erred in denying plaintiff's motion for a new trial. Because plaintiff filed a notice of appeal from the denial of his motion for a new trial and defendant has briefed the issue, we will also address that issue.

¶ 3                                    I. BACKGROUND

¶ 4  On October 31, 2011, plaintiff filed a complaint against defendant alleging defendant was negligent due to (1) his failure to keep a sufficient lookout, (2) driving too fast given the weather conditions, (3) failure to reduce speed to avoid an accident, and (4) failure to use a reasonable degree of care to keep his vehicle from colliding with another vehicle on the road. Plaintiff also alleged defendant's negligence caused defendant's truck to slide out of control and strike plaintiff's vehicle. Plaintiff sought damages for medical costs, lost time from his normal pursuits, great pain and emotional distress, and the loss of a normal life.

¶ 5  On October 7, 2013, the trial court held a jury trial. Plaintiff testified on January 10, 2010, he was driving out of his subdivision with his wife, Deena Hamilton, when defendant's truck left its lane and collided with his car in plaintiff's lane. Plaintiff testified the road was snow-packed but had been plowed. Plaintiff was driving around a curve in the road and down an incline when he noticed defendant's truck about 50 to 60 yards away. Plaintiff edged over to the side of the road as far as he could go and took his foot from the accelerator. Plaintiff

estimated he was traveling less than five miles per hour and did not know how fast defendant was traveling. Defendant's truck then slid into plaintiff's lane and car and "the back end slam[med] into the whole front of the car all the way down the side." The collision pushed plaintiff's car toward a ravine along the side of the road.

¶ 6 Plaintiff also testified, at the scene of the accident, he told an ambulance he did not need any assistance. After the accident, plaintiff began to feel stiff, experienced headaches, and had a burning pain in his neck. He visited Dr. David Winograd, his family doctor, and Dr. Terry Ward, a chiropractor he had seen in the past. During this time, he was not able to do things he normally enjoyed, such as cutting firewood and woodworking.

¶ 7 On cross-examination, plaintiff explained he realized the road, which had not been salted, was slick as soon as he exited his driveway. Plaintiff testified his wife warned him defendant's truck was coming toward them and might hit their vehicle. He saw defendant's truck only briefly, stating he was not looking at it because he was watching the road in front of him to stay as close to the outer edge as he could. Plaintiff stated the air bags did not deploy and the car did not go into the ravine.

¶ 8 Plaintiff called defendant as a witness. Defendant testified he was driving home from church in his father's truck, using the truck's four-wheel-drive feature. Defendant was traveling about 15 to 20 miles per hour, the same speed he typically goes down the road, when he lost control of the truck. Defendant explained he did not have any problems controlling his vehicle on his way to church a few hours before and believed he was traveling at a safe speed, as the truck had four-wheel drive.

¶ 9 Both Dr. Winograd and Dr. Ward testified as to plaintiff's injuries. Dr. Winograd, who testified by evidence deposition, said plaintiff visited him twice complaining of headaches and he had some limitation in his ability to move his neck from right to left. Dr. Winograd testified plaintiff's symptoms "could be contributed [*sic*] to the car accident." Dr. Ward testified about his treatment of plaintiff's injuries and stated he believed, within a reasonable degree of chiropractic certainty, plaintiff's injuries were caused by the collision. Plaintiff introduced his medical bills as evidence.

¶ 10 Defendant did not present any medical testimony. However, when cross-examining Dr. Winograd, defendant brought out plaintiff had only seen Dr. Winograd on two occasions following the accident. At the initial exam, Dr. Winograd found no tenderness on direct palpation of the cervical or thoracic spine. Plaintiff was able to touch his chin to his chest and look up and down without any problems. In turning his neck from left to right, plaintiff had a range of 60 degrees. For a person plaintiff's age, the expected rotation would be 90 degrees. Dr. Winograd never restricted plaintiff from any activities and never diagnosed any damage to the nerves in his neck or back. At the second visit on January 22, 2010, plaintiff reported being 30% improved. Dr. Winograd told plaintiff to see him again in two to three weeks if his symptoms had not improved significantly. Plaintiff did not see Dr. Winograd again as a result of the accident. In December 2010, plaintiff saw Dr. Winograd for a routine physical exam. At that time, plaintiff reported no headaches and did not report any ongoing problems with neck or back pain.

¶ 11 The chiropractor, Dr. Ward, testified plaintiff had degenerative changes throughout the cervical spine that existed long before the accident happened. None of the radiological findings, including bone spurs, disc degeneration, or arthritic changes, related to the accident. Dr. Ward's treatment related to whiplash injuries. March 5, 2010, was the last date Dr. Ward

treated plaintiff in that year for problems related to the accident. During the remainder of 2010, 2011, and 2012, Dr. Ward did not treat plaintiff for any injuries related to the accident. Dr. Ward admitted the pain plaintiff suffered could come from the degenerative changes that were unrelated to the accident. Dr. Ward also stated plaintiff suffered from significant arthritis and degenerative changes in his neck before the accident even happened.

¶ 12     Deena Hamilton testified before the collision occurred she noticed defendant's truck would likely hit them and told her husband to pull over. Defendant's truck then collided with their car. After the accident, plaintiff needed "a lot of therapy treatments" and was less physically active than he had previously been.

¶ 13     Defendant testified he was 18 years old at the time of the accident. Defendant reiterated he did not slip on his way to the church and the road's condition had not changed from when he earlier drove to church. Defendant was driving about 15 to 20 miles per hour and he believed he was traveling at a safe speed, given the four-wheel-drive truck he was operating. As a result of the accident, defendant received a traffic ticket for driving too fast for conditions and pleaded guilty to the traffic violation. Defendant testified he pleaded guilty because he had just turned 18 and wanted his license back as quickly as possible. He explained he would not have pleaded guilty had he known he would be sued a year later.

¶ 14     Defendant admitted his car was out of control when the accident happened. When asked, "in fact, you were going too fast for those conditions, weren't you?," defendant responded, "[t]he moment I lost control is when I hit the gas pedal, so I guess." Defendant further explained he hit the gas pedal because it was the only way to get up the hill, stating, "[y]ou're not going to glide up ice without hitting the gas."

¶ 15     During the jury-instruction conference, plaintiff moved for a directed verdict (735 ILCS 5/2-1202(a) (West 2012)) on the issue of liability. Defendant argued he had presented evidence tending to show he was driving at a safe speed and the evidence was sufficient to submit the case to the jury. The trial court agreed and denied plaintiff's motion. The jury returned a general verdict in favor of defendant.

¶ 16     On October 11, 2013, plaintiff filed a posttrial motion requesting a new trial. The motion listed grounds supporting the request, including the following: (1) the jury's verdict was against the manifest weight of the evidence, (2) "the jury's verdict was contrary to law," (3) "plaintiff was not contributorily negligent as a matter of law," (4) "[d]efendant was negligent as a matter of law," (5) "[p]laintiff did prove damages," (6) "the [c]ourt erred in failing to direct a verdict for the [p]laintiff at the close of evidence," and (7) "the [c]ourt erred in failing to direct a verdict on the issue of contributory negligence." The conclusion of the motion states, "[p]laintiff prays that this [c]ourt grant his Motion for a New Trial." Plaintiff did not request a judgment *n.o.v.* in his posttrial motion.

¶ 17     At the November 7, 2013, hearing on the motion, plaintiff argued the jury's verdict was against the manifest weight of the evidence because defendant admitted he lost control of his car, crossed the centerline, and struck plaintiff's car in plaintiff's lane of traffic. Plaintiff also argued that, from the evidence presented, no "serious issue" could be raised he was contributorily negligent and any negligence on his part could not have been the proximate cause of the collision. The trial court denied plaintiff's motion, explaining, "although the verdict may have been different than I personally would have entered if I was the finder of fact, I think there was evidence to support their findings."

¶ 18     This appeal followed.

## II. ANALYSIS

Plaintiff appeals from the trial court's denial of his posttrial motion. Plaintiff's posttrial motion sought only a new trial. However, plaintiff is seeking a judgment of liability against defendant from this court and a remand for trial on damages only. Defendant's brief addresses the issue as framed by plaintiff's notice of appeal, *i.e.*, whether the trial court erred in denying plaintiff's posttrial motion seeking a new trial. Because different standards of review apply to the decision to deny a motion for directed verdict/judgment *n.o.v.*, as opposed to a denial of a motion for new trial, we will first discuss this important distinction. Thereafter, we will discuss the procedural posture of this case.

### A. Standard Governing a Motion for Directed Verdict and Judgment *N.O.V.*

As noted above, there are distinct standards to be used by the trial court in deciding whether to grant a directed verdict, judgment *n.o.v.*, or a new trial. *Maple v. Gustafson*, 151 Ill. 2d 445, 453, 603 N.E.2d 508, 512 (1992). Trial courts apply what is known as the *Pedrick* standard when deciding a motion for directed verdict or a motion for judgment *n.o.v.* Under that standard, a directed verdict or judgment *n.o.v.* is properly granted only where "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967). In ruling on these motions, "a court does not weigh the evidence, nor is it concerned with the credibility of the witnesses; rather it may only consider the evidence, and any inferences therefrom, in the light most favorable to the party resisting the motion." *Maple*, 151 Ill. 2d at 453, 603 N.E.2d at 512. Our supreme court pointed out motions for a directed verdict and motions for judgment *n.o.v.*, although made at different times, raise the same questions and are governed by the same rules of law. *Id.* at 453 n.1, 603 N.E.2d at 512 n.1.

A trial court is not free to enter a directed verdict or judgment *n.o.v.* "if there is *any* evidence, together with reasonable inferences to be drawn therefrom, demonstrating a substantial factual dispute, or where the assessment of credibility of the witnesses or the determination regarding conflicting evidence is decisive to the outcome." (Emphasis added.) *Id.* at 454, 603 N.E.2d at 512. This is a very high standard. The trial court, or for that matter, a reviewing court, is not free to reweigh the evidence and substitute its judgment for that of the jury because the court feels a different result is more reasonable. *Id.* at 452-53, 603 N.E.2d at 512.

We review a trial court's decision on a motion for directed verdict or judgment *n.o.v. de novo. McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 132, 720 N.E.2d 242, 257 (1999).

### B. Standard Governing a Motion for New Trial

When a party files a posttrial motion seeking a new trial, the trial court weighs the evidence and may set aside the verdict and order a new trial " 'if the verdict is contrary to the manifest weight of the evidence.' " *Maple*, 151 Ill. 2d at 454, 603 N.E.2d at 512 (quoting *Mizowek v. De Franco*, 64 Ill. 2d 303, 310, 356 N.E.2d 32, 36 (1976)). "A verdict is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary and not based upon any of the evidence." (Internal

quotation marks omitted.) *Id.* at 454, 603 N.E.2d at 512-13. The application of this standard is addressed to the sound discretion of the trial court. *Id.* at 455, 603 N.E.2d at 513. "A court's ruling on a motion for a new trial will not be reversed except in those instances where it is affirmatively shown that it clearly abused its discretion." *Id.* The abuse-of-discretion standard applies because the trial judge had the benefit of observing the witnesses firsthand at the trial and credibility issues may have been relevant to the jury's verdict. *Id.* at 456, 603 N.E.2d at 513. In determining whether the trial court abused its discretion, we consider whether the jury's verdict was supported by the evidence and whether the losing party was denied a fair trial. *Id.* at 455, 603 N.E.2d at 513.

¶ 27                              C. Procedural Posture of This Case

¶ 28        During the jury-instruction conference, plaintiff moved for a directed verdict, which the trial court denied. Plaintiff filed his posttrial motion, delineating various errors that occurred during the trial, including the trial court's failure to grant plaintiff a directed verdict. Plaintiff's posttrial motion requested only a new trial. It did not request, in the alternative, a judgment *n.o.v.* While not waiving any of his bases for the motion, delineated above, plaintiff basically argued the jury's verdict was against the manifest weight of the evidence. As noted above, this is the standard the trial court applies to a motion for a new trial.

¶ 29        Under section 2-1202(a) of the Code of Civil Procedure (735 ILCS 5/2-1202(a) (West 2012)), if the trial court denies a motion for a directed verdict in a jury trial, "the motion is waived unless the request is renewed in the post-trial motion." All relief desired after a jury trial, whether, *inter alia*, judgment *n.o.v.* or for a new trial, must be sought in a single posttrial motion. 735 ILCS 5/2-1201(b) (West 2012). The posttrial motion must "contain the points relied upon, particularly specifying the grounds in support thereof, and must state the relief desired, as for example, the entry of a judgment, the granting of a new trial or other appropriate relief." *Id.* The relief requested in the motion may be in the alternative or conditioned on the trial court denying other requested relief. *Id.*

¶ 30        Under Illinois Supreme Court Rule 366(b)(2)(iii) (eff. Feb. 1, 1994), "[a] party may not urge as error on review of the ruling on the party's post-trial motion any point, ground, or *relief* not specified in the motion." (Emphasis added.) Rule 366(b)(2)(iii) prohibits what plaintiff attempts to do in this case, which is to claim, on appeal, the trial court essentially erred in failing to grant him a judgment *n.o.v.* when he did not request such relief in his posttrial motion. See Ill. S. Ct. R. 366(b)(2)(iii) (eff. Feb. 1, 1994); see also *Maple*, 151 Ill. 2d at 454, 603 N.E.2d at 513 (the appellate court effectively grants a judgment *n.o.v.* when it remands a cause for further proceedings on damages only). The plain language of section 2-1202(a), that a party "renew" a "request" for a directed verdict, read in conjunction with section 2-1202(b)'s requirement a party specify the type of relief desired, requires a party to request a judgment *n.o.v.* in its posttrial motion to preserve the issue for review. While plaintiff's posttrial motion states the trial court erred in denying plaintiff's motion for a directed verdict, it frames the argument as a point supporting his request for a new trial. Under both section 2-1202 and Rule 366(b)(2)(iii), this mere allegation of error in the posttrial motion is insufficient to raise the issue without a corresponding request for a judgment *n.o.v.*

¶ 31        Plaintiff's failure to request a judgment *n.o.v.* in his posttrial motion is not a mere technical deficiency. A request for a judgment *n.o.v.* and a motion for a new trial differ from each other, and, as discussed above, the supreme court has carefully preserved the distinction in the

evidentiary standard courts apply to each. *Maple*, 151 Ill. 2d at 453, 603 N.E.2d at 512. "A directed verdict or a judgment *n.o.v.* is properly entered in those limited cases where 'all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.' " *Id.* (quoting *Pedrick*, 37 Ill. 2d at 510, 229 N.E.2d at 513-14). On the other hand, a motion for a new trial is properly entered when the trial court, after weighing the evidence, concludes the verdict is contrary to the manifest weight of the evidence. *Id.* at 454, 603 N.E.2d at 512. Plaintiff's motion for a new trial would not implicate the evidentiary standard applicable to a request for a judgment *n.o.v.* Moreover, by failing to request a judgment *n.o.v.*, plaintiff did not give the trial court an opportunity to reconsider its decision to deny his request for a directed verdict.

¶ 32    Plaintiff's posttrial motion did not request a judgment *n.o.v.* Consequently, plaintiff is precluded from asking this court to enter judgment on liability.

¶ 33                                D. Motion for New Trial

¶ 34    While plaintiff appeals from the denial of his motion for a new trial, as noted above, he is essentially asking this court to enter a judgment *n.o.v.* Defendant has chosen to brief the issue as framed by the notice of appeal. Although this court would be justified pursuant to Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013) in declining to address the denial of the posttrial motion because of plaintiff's failure to clearly and sufficiently brief that issue, defendant is not prejudiced by our choosing to address the issue, in light of the fact he briefed it fully.

¶ 35    Here, plaintiff had to prove defendant was negligent, that plaintiff suffered damages, and the damages were proximately caused by defendant's negligence. While plaintiff submitted sufficient evidence for the jury to return a verdict in his favor, there was evidence before the jury to support a finding the accident did not proximately cause plaintiff's injuries. While Dr. Winograd testified plaintiff sought treatment following the accident, he was only able to say plaintiff's complaints of pain and discomfort *could* have been attributed to the accident. Dr. Ward testified all of the objective findings on radiology reports were the result of past injuries and degeneration due to aging. None of the bone spurs, stenosis, or degeneration was a result of the accident. Thus, the jury, based on the evidence, could have found the medical issues for which plaintiff sought treatment were not the result of the accident. While the trial judge may have found differently, she was not at liberty to substitute her judgment for that of the jury, and neither are we.

¶ 36    As a result, we are unable to find the trial court abused its discretion when it denied plaintiff's motion for a new trial on the basis the jury verdict was not against the manifest weight of the evidence.

¶ 37                                III. CONCLUSION

¶ 38    For the reasons stated, we affirm the trial court's judgment.

¶ 39    Affirmed.