2020 IL App (2d) 190017
No. 2-19-0017
Opinion filed August 18, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of De Kalb County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 14-CF-575 |
| | ) | |
| RICHARD JANUSZ, | ) | Honorable |
| | ) | Philip G. Montgomery, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BRIDGES delivered the judgment of the court, with opinion.
Justices McLaren and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, defendant, Richard Janusz, was found guilty of 11 counts of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2014)) and 4 counts of manufacturing child pornography (*id.* § 11-20.1(a)(1)(vii)). Defendant was sentenced to 101 years' imprisonment.

¶ 2    On appeal, defendant argues that the trial court erred in (1) denying his motion to dismiss on speedy-trial grounds and (2) denying his motion for a new trial based on his trial counsel's ineffective assistance. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4                                     A. Pretrial

¶ 5        Defendant was charged by information on August 1, 2014, with 15 counts of predatory criminal sexual assault of a child in violation of section 11-1.40(a)(1) of the Criminal Code of 2012 (Criminal Code) (*id.* § 11-1.40(a)(1)) and 3 counts of possession of child pornography in violation of section 11-20.1(a)(6) of the Criminal Code (*id.* § 11-20.1(a)(6)). The 15 counts of predatory criminal sexual assault of a child alleged that, between January 1, 2010, and July 30, 2014, defendant knowingly committed acts of sexual penetration of R.M., a minor under the age of 13, in that he placed his finger in R.M.'s sex organ. The three counts of possession of child pornography alleged that, on or about July 31, 2014, defendant possessed a visual reproduction or depiction by computer of a child whom defendant knew or should have known to be under the age of 13 engaged in the lewd exhibition of the child's genitals.

¶ 6        At the August 1, 2014, hearing, the court advised defendant of the charges against him and the punishments should he be convicted, including consecutive sentences of at least six years per charge of predatory criminal sexual assault of a child and lifetime registration as a sex offender. Defendant stated that he understood the charges against him, and the court appointed a public defender. On August 19, 2014, defendant filed a demand for a speedy trial.

¶ 7        On August 20, 2014, defendant appeared with his appointed counsel, and counsel requested a status date for after he had time to review material from the State. The court entered an order of continuance by agreement and set a status hearing for September 29, 2014. Following the September 29 hearing, the court entered additional orders of continuance by agreement, on September 29 and October 1, 2014.

¶ 8        On October 6, 2014, a grand jury returned a 30-count indictment against defendant. Counts I through XXVI were for predatory criminal sexual assault of a child (*id.* § 11-1.40(a)(1)) for committing acts of sexual penetration with R.M., including placing his penis in R.M.'s anus,

placing his finger in R.M.'s sex organ, and placing his mouth on R.M.'s sex organ, and counts XXVII through XXX were for the manufacture of child pornography (*id.* § 11-20.1(a)(1)(i), (vii)) in that defendant photographed a child he knew to be under the age of 13 depicting a lewd exhibition of the child's unclothed pubic area, depicting a lewd exhibition of the child's unclothed breasts, and depicting an act of sexual penetration involving defendant's sex organ and the child's anus.

¶ 9    Defendant acknowledged receipt of the indictment on October 8, 2014. The trial court stated that counsel would have the opportunity to review the indictment with defendant before an arraignment on the next court date. The case was again continued by agreement to November 4, 2014, but defendant was not arraigned on November 4.

¶ 10    Between the October 8 and November 4 hearings, defendant retained new counsel. At the November 4 hearing, defendant's new counsel filed an appearance and the trial court discharged the public defender. The case was continued by agreement after the November 4 hearing and again after a December 4 hearing.

¶ 11    The case was then continued multiple times at defendant's request: January 22, 2015 (for defense counsel to review discovery); March 12, 2015 (for defense counsel to review evidence in the possession of the police department); April 23, 2015 (following receipt of disclosures from the State); July 14, 2015 (after retaining an expert); August 24, 2015 (based on defendant's divorce trial set in September); October 15, 2015 (awaiting the ruling on defendant's divorce case); December 3, 2015 (following resolution of defendant's divorce case and the release of marital

funds); January 4, 2016 (to acquire experts); and March 3, 2016 (waiting to hear from retained experts).[1]

¶ 12    At the October 15, 2015, hearing, the trial court remarked that it was "not sure if we've had an arraignment on the case." The assistant state's attorney responded that the indictment was tendered in 2014, so she hoped so. The court scheduled defendant's arraignment for the next court date, but it did not occur. The court again brought up defendant's lack of an arraignment on March 3, 2016, and it set his arraignment for April 21, 2016.

¶ 13    Defendant was arraigned on April 21, 2016. The trial court admonished defendant that all 30 charges against him were Class X felonies and therefore he could not receive probation. The court also admonished him that, if he were convicted of all counts, his minimum sentence would be 186 years[2] and his maximum sentence would be 1680 years. Further, the court continued, defendant would also be subject to at least three years of mandatory supervised release for up to natural life, and it advised him of his right to plead not guilty, his right to be represented by a lawyer, and his right to confront witnesses. Defendant stated that he understood his rights. Defendant waived a formal reading of the charges, and he pled not guilty.

---

[1] Defense counsel failed to appear on June 18, 2015, and August 20, 2015, and those hearings were instead continued to July 14, 2015, and August 24, 2015, respectively. In addition, the court entered an order of continuance by agreement on November 3, 2015.

[2] The court calculated this number using the minimum sentence for a Class X felony (6 years) times 31 counts. We note, however, that defendant was charged with 30 counts, so the minimum should have been 180 years.

¶ 14 On June 2, 2016, defense counsel requested additional discovery, based on defendant's expert's initial review. The trial court continued the case upon defendant's request.

¶ 15 On July 28, 2016, the trial court remarked that the case was getting old and that it needed to be either set for trial or in the posture of a plea. Defense counsel responded that the defense had hired an expert and that a large part of the delay was due to defendant's divorce case. Now that the divorce case was resolved, defendant was obtaining money through the marital estate, which had been frozen, to retain the expert. Defense counsel asked for a continuance to September 15, 2016, and the court entered the order. On September 15, the court granted another continuance, per defendant's request. It set a status hearing for October 25, 2016, and it set the jury trial for February 6, 2017. At the October 25 status hearing, defense counsel again sought a continuance to November 29, 2016, for filing pretrial motions, and the court granted the request.

¶ 16 On November 29, 2016, defendant filed a motion to dismiss. He argued that various counts were duplicative, violating the "one act, one crime" doctrine, and he sought dismissal of multiple counts. The trial court denied the motion to dismiss on January 20, 2017, and it continued the case to January 27 for any additional motions. Defendant filed additional motions on that date, including a demand for a bill of particulars and a motion for discovery, and the case was continued at defendant's request.

¶ 17 On January 31, 2017, the court determined that the State did not need to respond to defendant's bill of particulars. Defense counsel then stated that he still intended to file another motion once his expert provided a report. Counsel agreed that he would not be ready for trial the next week. He was seeking a continuance. The State interjected that this delay was not occasioned by the State. The court agreed and turned to counsel, asking "[a]nd that's tolled on the speedy trial because they're answering ready, correct?" Counsel responded yes and then stated that "I don't

think we've ever pulled the trigger on [defendant's] speedy, but I would in fact toll it again." The case was continued on defendant's request, and the January 31, 2017, continuance order stated: "delay occasioned by the defense" and "speedy tolled." The case was continued several more times by either agreement or defendant's request.

¶ 18 On October 12, 2017, defendant filed a motion to dismiss, based on a violation of his right to a speedy trial under the Code of Criminal Procedure of 1963 (Code of Criminal Procedure) (725 ILCS 5/103-5, 114-1 (West 2016)) as well as the sixth amendment of the United States Constitution (U.S. Const., amend. VI). Therein, defendant argued that no trial date was set within 120 days of him being taken into custody and that the delay could not be attributable to him. In addition, he argued that he had not been arraigned for 630 days and that this delay was attributable to the State. The matter was continued, and the trial date was stricken.

¶ 19 On October 18, 2017, defendant filed an amended motion to dismiss, and on November 16, 2017, he filed a second amended motion to dismiss. The second amended motion added numerous dates when the case was continued and argued that those delays were attributable to the State or the trial court. Defense counsel did not file his memorandum in support of his motion to dismiss until January 12, 2018, after several more continuances.

¶ 20 The trial court denied defendant's motion to dismiss on February 1, 2018. In addressing the dates of the continuances, the court disagreed that the continuances were attributable to the State or the court. Rather, the continuances were either attributable to defendant or by agreement. Therefore, it concluded, all the cited continuances tolled the speedy-trial period. The court also determined that there was no requirement that defendant be arraigned within a certain time frame following his indictment. It noted that defendant acknowledged that he could find no case law specific to the issue requiring arraignment within a certain time frame of an indictment.

¶ 21                                    B. Trial

¶ 22    Defendant's jury trial commenced on May 7, 2018. R.M. testified as follows. She was born on April 11, 2003, and was 15 years old at the time of the trial. Defendant was her stepfather. Her parents divorced when she was two years old, and her mother moved in with defendant after the divorce. She lived with her mother and defendant in several houses, first in Sheridan (and then at two residences in Sycamore. The family moved from Sheridan to Sycamore when she was in fifth grade. They moved again to another residence in Sycamore by the time she was in sixth grade.

¶ 23    Defendant sexually abused her beginning when she was six or seven years old. The first time that defendant abused her, he touched her breast and nipple with his hand. This occurred in their truck while they were driving back from bowling. It made her feel unsafe.

¶ 24    Defendant touched her with his hand on subsequent occasions. He used his hand to touch her "vaginal area" under her clothing. He touched her "[i]nside and outside." She described the experience as painful. She was still at the Sheridan house when this type of touching began.

¶ 25    This type of touching continued at the Sycamore residences. At the first residence, he touched her when they were either in his room, the living room, or the basement. When they were in his room, it was on the bed. He touched her "vaginal [*sic*] and [her] boob" when they were on the bed. When he touched her vaginal area, he touched "inside." He touched her when they were in his room more than five times.

¶ 26    When defendant touched her when they were in the living room, she would be on his lap, on the couch. He would put his hand in her pants and "go inside" her vaginal area. Sometimes others were present in the room, but they could not see what was happening. She was covered by a blanket from the torso down. Sometimes she jerked away because she was in pain. Defendant

touched her when they were in the living room several times. R.M. had tried to tell people that defendant touched her when the abuse first began, but people did not believe her.

¶ 27    In the basement, defendant would be in a chair and she would be on his lap. When she was on his lap, he put his hand down her pants and touched her inside her vaginal area. This occurred more than five times.

¶ 28    The same type of touching occurred at the second Sycamore residence. There, defendant touched her when they were in his room and in the living room. He touched her inside her vaginal area with his hand more than five times.

¶ 29    In addition, defendant used his tongue to touch her vaginal area and her nipple. The first incident was in her bedroom at the Sheridan residence, before she went to bed. She remembered that the next day was "crazy hair day" at school. She wanted to get hair products for her hair, and defendant said that, if he could lick her vaginal area, he could get her the products but that, if she did not let him, he could not. She let him do it, and it felt gross.

¶ 30    Defendant used his tongue to touch her in the same way at the Sycamore residences as he had at the Sheridan residence. She did not know how many total times he used his tongue to touch her, but it was more than once.

¶ 31    Defendant also touched her with his penis by putting his penis inside her anus. This first happened at the first Sycamore residence. It was in his room, and nobody else was home that day. She remembered that she was wearing SpongeBob pajama pants and a shirt with a cheetah print heart and that she was playing a game on her phone. Defendant came out of the shower naked and had her come to him. He pulled down her pants and inserted his penis into her anus. It felt painful.

¶ 32    Defendant took pictures of her that day. He took pictures of her breasts; she was lifting her shirt up to expose them. The State showed her People's Exhibit 1, which was the picture of her

breasts. She identified herself in the picture, and the exhibit was admitted into evidence. She also identified pictures of her vaginal area taken by defendant that same day. Those pictures were admitted into evidence.

¶ 33    Defendant also made her touch him by putting her hand on his penis. This occurred more than once. It felt disgusting and hairy.

¶ 34    On July 31, 2014, around 5 a.m., the police showed up at her house. She was taken to family counseling, where she was interviewed and told what defendant had done to her.

¶ 35    On redirect, R.M. stated that the abuse happened often, making it hard to remember specific dates.

¶ 36    Shannon Krueger testified next as follows. She was a certified pediatric nurse practitioner, and she worked for the University of Illinois College of Medicine Medical Evaluation Response Initiative Team program. They took referrals from the Department of Children and Family Services and other agencies when a child was suspected to have been physically or sexually abused. She examined R.M., and R.M. told her about defendant touching her, beginning around age seven. R.M. told her that defendant touched both her vaginal area and her "butt," including that defendant had progressed to putting his penis in her anal area. R.M. said that defendant touched her about four times a week, sometimes touching her underneath a blanket while in the presence of other family members.

¶ 37    Krueger's examination revealed redness of the labia minora and some anal laxity. The findings were nonspecific, but that was not unusual in an abuse case. The hymenal, vaginal, and anal tissues were observed, and they are mucous membranes, which are made to stretch and which heal quickly. Thus, any finding of ripping or tearing of these membranes was rare in these types of abuse cases.

¶ 38    Detective Jonathan Miller testified that he interviewed defendant on July 31, 2014, and that the interview was recorded on video. The video of the interview was admitted into evidence. Miller testified that he asked defendant whether defendant penetrated R.M., and defendant responded that he rubbed around the vagina and applied pressure.

¶ 39    After the State rested, defendant moved for a directed verdict on the counts involving penetration of R.M.'s sex organ by defendant's finger. The trial court denied the motion.

¶ 40    On May 10, 2018, the jury found defendant guilty of 11 counts of predatory criminal sexual assault of a child: one instance of placing his penis in R.M.'s anus, two instances of placing his mouth on R.M.'s sex organ, and eight instances of placing his finger in R.M.'s sex organ. It also found defendant guilty of four counts of manufacturing child pornography. Defendant was sentenced to 101 years in the Illinois Department of Corrections.

¶ 41                                C. Posttrial

¶ 42    Following the jury verdict, defense counsel withdrew his representation of defendant, and defendant retained substitute counsel. His new counsel entered an appearance on July 13, 2018.

¶ 43    On July 30, 2018, defendant moved for a new trial and/or judgment notwithstanding the verdict. He filed a supplemental motion for new trial on November 5, 2018. In part, defendant argued that he was deprived of the effective assistance of counsel for his trial counsel's failure to submit instructions on the lesser included offense of aggravated criminal sexual abuse for the charges of predatory criminal sexual assault of a child. He also argued that the court erred in denying his motion to dismiss on speedy-trial grounds.

¶ 44    The trial court heard defendant's motion for new trial on January 3, 2019. Defendant testified at the hearing as follows. Before the trial, his trial counsel never discussed with him the possibility of submitting an instruction on the lesser included offense of aggravated criminal sexual

abuse. Before his trial counsel moved for a directed verdict, defendant asked him to include a lesser-included-offense instruction in the directed-verdict motion. Trial counsel did not do so. Defendant was unaware that the lesser-included-offense instruction could have been submitted to the jury. Had he known, he would have requested that the instruction go to the jury.

¶ 45    Defendant clarified on cross-examination that he believed that the lesser-included-offense instruction could be submitted to the judge but that he could not ask for it to be submitted to the jury. He thought that it was the judge's decision to submit the instruction to the jury.

¶ 46    The trial court denied the motion for a new trial. First, it did not believe defendant's testimony. It did not believe that defendant asked his trial counsel for a lesser-included-offense instruction, and it did not believe defendant's testimony that he thought he could ask for a lesser-included-offense instruction on a directed verdict but not at other times. Moreover, even if the court believed defendant, the decision was a matter of trial strategy. The court believed that counsel's trial strategy was to demonstrate that defendant was "out-and-out not guilty" instead of asking for a lesser-included-offense instruction.

¶ 47    Defendant timely appealed.

¶ 48                                    II. ANALYSIS

¶ 49    Defendant makes two arguments on appeal. First, he argues that the trial court erred in denying his motion to dismiss on speedy-trial grounds. In particular, he argues that he was not arraigned until 630 days after his arrest and that the delays in his arraignment were not attributable to him. Second, defendant argues that the trial court erred in denying his motion for a new trial, because his trial counsel was ineffective for failing to submit instructions on the lesser included offense of aggravated criminal sexual abuse. We address his arguments in turn.

¶ 50                                    A. Speedy Trial

¶ 51    Defendant argues that his delayed arraignment violated his right to a speedy trial and that therefore the trial court erred in denying his motion to dismiss on speedy-trial grounds. Citing section 103-5(a) of the Code of Criminal Procedure (725 ILCS 5/103-5(a) (West 2016)), defendant argues that an unexplained delay in arraignment beyond 120 days from the date of an arrest violates a defendant's speedy-trial right. He notes that he was arrested on August 1, 2014, and demanded a speedy trial on August 19, 2014, but that he was not arraigned until April 21, 2016, which was 630 days following his arrest.

¶ 52    Further, he continues, an arraignment is not optional but is a critical stage of a criminal proceeding. Defendant concedes that the Code of Criminal Procedure does not specify a time frame for arraignment, but he argues that, under ordinary principles of statutory construction, an arraignment must occur within a reasonable time after an arrest. He argues that his arraignment more than 600 days following his arrest was unreasonable.

¶ 53    Defendant admits that his attorneys acquiesced to "a large number of continuances" between his demand for a speedy trial on August 19, 2014, and his arraignment on April 21, 2016. Defendant argues, however, that in the absence of an arraignment, trial delays cannot be attributed to him. Defendant argues that, without an arraignment, it was not possible for him to agree to a postponement of the trial. Moreover, he argues that a defendant has no right to demand or refuse an arraignment and that therefore the delay in his arraignment cannot be attributed to him. He argues that the delay in his arraignment was solely the fault of the court and the State.

¶ 54    The State responds that defendant has failed to cite case law supporting that the delays in his arraignment were not attributable to him. The State agrees with defendant that section 103-5 provides an accused's statutory right to a speedy trial and that, in this case, section 103-5(a)'s 120-day term applied. *Id.* However, the State argues that, under section 103-5(a), any delay occasioned

by the defendant will be excluded from the speedy-trial term. The State continues, noting that a delay is occasioned by a defendant when his acts caused or contributed to a delay resulting in the postponement of the trial, that is, any action that moves the trial date outside of the speedy-trial term. The State argues that, here, defendant was arraigned prior to the trial and prior to raising a speedy-trial objection and that each continuance between defendant's arrest and his arraignment was either by his request or by agreement.

¶ 55     We reject defendant's argument that his arraignment violated his statutory right to a speedy trial. In Illinois, a defendant has both a constitutional and a statutory right to a speedy trial. *People v. Bauman*, 2012 IL App (2d) 110544, ¶ 16 (citing U.S. Const., amends. VI, XIV, Ill. Const. 1970, art. I, § 8, and 725 ILCS 5/103-5 (West 2010)). The Illinois speedy-trial statute implements the constitutional right to a speedy trial (*id.*), although the constitutional and statutory rights to a speedy trial are not necessarily coextensive (*People v. Kilcauski*, 2016 IL App (5th) 140526, ¶ 19).

¶ 56     On appeal, defendant argues his statutory right to a speedy trial. Our standard of review for a statutory speedy-trial issue is twofold. First, absent an abuse of discretion, we will sustain the trial court's determination as to who is responsible for a delay in the trial (*People v. Kliner*, 185 Ill. 2d 81, 115 (1998)), and, second, we review *de novo* the ultimate question of whether the defendant's statutory right was violated (*People v. Pettis*, 2017 IL App (4th) 151006, ¶ 17). To avoid infringements of the defendant's constitutional right to a speedy trial, the statutory speedy-trial provisions are to be liberally construed in favor of the defendant. *Bauman*, 2012 IL App (2d) 110544, ¶ 16.

¶ 57     Because defendant was in custody following his arrest, the relevant speedy-trial provision is section 103-5(a) of the Code of Criminal Procedure (725 ILCS 5/103-5(a) (West 2016)). It provides:

"Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant \*\*\*. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." *Id.*

There is no question that more than 120 days passed between when defendant was arrested and when he was tried. See *People v. Mayo*, 198 Ill. 2d 530, 536 (2002) (the statutory period begins to run from the day the defendant is taken into custody, regardless of a formal trial demand). Accordingly, the relevant question is whether defendant occasioned the delay in his trial. Delay is occasioned by a defendant when his acts caused or contributed to a delay resulting in a postponement of his trial. *People v. Murray*, 379 Ill. App. 3d 153, 158-59 (2008). Actions that cause or contribute to a delay include requests and agreements for a continuance. *People v. Patterson*, 392 Ill. App. 3d 461, 467 (2009).

¶ 58    The trial court found that the delays in this case were attributable to defendant. The court cited the numerous continuance orders from when defendant was taken into custody until when he was arraigned. The record reflects that all these continuance orders were entered either at defendant's request or by agreement. See *supra* ¶¶ 7-11. Defendant even concedes that his attorneys acquiesced to numerous continuances. Because a defendant occasions a delay under section 103-5(a) when he requests or agrees to a continuance and because these continuances resulted in defendant's trial commencing beyond the 120-day statutory period, the trial court's determination that these delays were occasioned by defendant was not an abuse of discretion. We further note that many of the continuances following defendant's arraignment on April 21, 2016, until his trial on May 7, 2018, were occasioned by defendant. See *supra* ¶¶ 14-19.

¶ 59    Nevertheless, defendant argues that section 103-5(a) required his *arraignment* within either 120 days or a reasonable time and that any delay of his trial before he was arraigned could not be attributed to him.[3] We decline to interpret section 103-5(a) as providing an implicit time frame for an arraignment. Section 103-5(a) specifically contemplates the time frame for proceeding from custody to *trial*. See *People v. Cordell*, 223 Ill. 2d 380, 390 (2006) (Section 103-5(a) "provides only a starting point—the date custody begins, and an ending point—120 days later."). It is silent on arraignment, as well as any other stage between a defendant's custody and trial.

¶ 60    Consider the scenario where a defendant is arraigned 150 days after entering custody. His trial commences thereafter, without any delay attributed to the defendant. In such a situation, section 103-5(a) would be violated. Importantly, the statutory violation would not be because the defendant's arraignment occurred outside the 120-day period but rather because his trial commenced outside the 120-day statutory period. In a different scenario, if a defendant were timely tried without being arraigned, the failure to arraign the defendant would not necessarily affect the validity of the proceedings. See 725 ILCS 5/113-6 (West 2016) ("Neither a failure to arraign nor an irregularity in the arraignment shall affect the validity of any proceeding in the cause if the defendant pleads to the charge or proceeds to trial without objecting to such failure or irregularity.").

¶ 61    Finally, defendant is incorrect that he could not occasion delay prior to his arraignment. See *Cordell*, 223 Ill. 2d at 390 (delay does not need to be of a set trial date; delay includes any

_____

[3] At oral argument, defendant's counsel conceded that his speedy-trial argument was based on the delay in his arraignment and that, absent his delayed arraignment, the continuances would have been delays occasioned by defendant and he would have had no good speedy-trial argument.

action by either party or the trial court that moves the trial date outside of the 120-day statutory window). In fact, as in this case, a delay in an arraignment can be attributed to the defendant and toll the speedy-trial window. See *People v. Boyd*, 363 Ill. App. 3d 1027, 1037 (2006) ("[A]ny delay resulting from a defendant's failure to proceed with an arraignment is chargeable to the defendant [citation]."); *People v. Paulsgrove*, 178 Ill. App. 3d 1073, 1076 (1989) (explaining that any delay occasioned by the defendant's refusal to proceed with an arraignment should be charged to the defendant).

¶ 62    Accordingly, defendant's statutory speedy-trial right was not violated, and the trial court did not err in denying defendant's motion to dismiss.

¶ 63                              B. Ineffective Assistance of Counsel

¶ 64    Defendant's second argument is that the trial court should have granted his motion for a new trial, based on his trial counsel's ineffective assistance. Specifically, defendant argues that his trial counsel did not discuss with him whether to submit an instruction on aggravated criminal sexual abuse (720 ILCS 5/11-1.60 (West 2014)), which was a lesser included offense of predatory criminal sexual assault of a child (*id.* § 11-1.40). He argues that the decision whether to tender an instruction on a lesser included offense belongs to a defendant but that the trial court here focused on his counsel's performance instead of counsel's failure to discuss the instruction with him.

¶ 65    Moreover, defendant argues that his trial counsel's failure to submit the instruction was prejudicial. Several of the predatory-criminal-sexual-assault-of a child counts alleged that defendant placed his finger in R.M.'s sex organ. Defendant argues that aggravated criminal sexual abuse, which requires an act of sexual conduct done for sexual gratification or arousal, is contained within the charge of predatory criminal sexual assault, which requires an act of sexual penetration. Further, the evidence at trial would have allowed a rational jury to find him guilty of aggravated

criminal sexual abuse and not guilty of predatory criminal sexual assault, with respect to the charges based on digital penetration. Defendant points to Miller's testimony that defendant denied penetrating R.M.'s vagina but rather said that he rubbed around her vagina and applied pressure. Defendant also cites his counsel's closing argument, where counsel argued that defendant "[threw] away his self-protection and he [told] the truth," in that he confessed that he rubbed, touched, and fondled R.M. but denied any penetration.

¶ 66   The State responds that the trial court properly denied defendant's motion for a new trial. The State does not contest that aggravated criminal sexual abuse is a lesser included offense of predatory criminal sexual assault of a child. Nevertheless, the State argues, the decision whether to include the instruction was a matter of trial strategy. Moreover, the State continues, the court made specific credibility findings against defendant on his motion for a new trial. In particular, the court found defendant's testimony on the motion incredible, stating:

> "I don't believe [defendant]. I don't believe [defendant] when he just testified that he knew he could at [the] directed [verdict] stage ask for a lesser-included offense *** I don't believe him when he said that he asked [counsel] for a lesser-included offense, and I find his testimony incredible."

The State argues that the court's credibility determination is due great deference and that this alone should lead us to affirm on this issue.

¶ 67   The State continues, arguing that, regardless of the court's credibility determinations, defendant was not entitled to the lesser-included-offense instruction. The State cites testimony from the trial, including R.M.'s testimony that defendant touched her both inside and outside of her vaginal area on multiple occasions. The State also cites defendant's admissions that he rubbed,

touched, and fondled R.M.'s genitals, and it argues that these admissions alone can support sexual penetration.

¶ 68    We hold that the trial court did not err in denying defendant's motion for a new trial, because defendant's trial counsel was not ineffective. We generally review a trial court's decision on a motion for new trial for an abuse of discretion. *Hamilton v. Hastings*, 2014 IL App (4th) 131021, ¶¶ 24, 26. However, the core issue here is whether defendant's trial counsel was ineffective. In reviewing a claim of ineffective assistance of counsel, we defer to the trial court's factual findings, but we review *de novo* the ultimate issue whether counsel was ineffective. *People v. Westmoreland*, 2013 IL App (2d) 120082, ¶ 27.

¶ 69    Under the sixth amendment, a defendant is guaranteed the right to effective counsel at all critical stages of a criminal proceeding. U.S. Const., amend. VI; *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 81. To demonstrate ineffective assistance of counsel, a defendant must show two elements: (1) counsel's performance fell below an objective standard of reasonableness and (2) counsel's deficient performance prejudiced the defendant. *People v. Jackson*, 2020 IL 124112, ¶ 90 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Prejudice means that, absent counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Id.* A defendant must satisfy both prongs, and therefore we may dispose of an ineffective assistance claim on either prong. *Id.*

¶ 70    We dispose of defendant's claim on the prejudice prong because there was no reasonable probability that the jury would have convicted defendant of aggravated criminal sexual abuse instead of predatory criminal sexual assault of a child. Here, the salient difference between the two offenses is that predatory criminal sexual assault of a child requires an act of "sexual penetration"

(720 ILCS 5/11-1.40(a) (West 2014)), whereas aggravated criminal sexual abuse requires "sexual conduct" (*id.* § 11-1.60(b), (c)). The Criminal Code defines sexual penetration as:

> "[A]ny contact, however slight, between the sex organ or anus of one person and an object or the sex organ, mouth, or anus of another person, *or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person*, including, but not limited to, cunnilingus, fellatio, or anal penetration." (Emphasis added.) *Id.* § 11-0.1.

In contrast, sexual conduct requires only any knowing touching or fondling by the accused, either directly or through clothing, of the body of a child under 13 years of age for the purpose of sexual gratification or arousal. *Id.*

¶ 71    Whether sexual penetration occurred is a question of fact to be determined by the jury. *People v. Hillier*, 392 Ill. App. 3d 66, 69 (2009). In *Hillier*, the court affirmed a finding of sexual penetration even without specific testimony that the defendant was inside the victim's vagina. See *id.* (a jury may reasonably infer penetration based on testimony that a defendant "rubbed," "felt," or "handled" the victim's vagina, and this inference is unreasonable only if the victim denies penetration). Recently, this court held that a victim's testimony that the defendant "touched" and "poked" her vagina was evidence from which a reasonable jury could infer sexual penetration by the defendant's finger. *People v. Foster*, 2020 IL App (2d) 170683, ¶¶ 32-36. In *Foster*, we based the holding on the totality of the circumstances, which included the victim's use of the words "hurts," "puts," and "would put" to describe the defendant's intrusion to her vagina. (Internal quotation marks omitted.) *Id.* ¶ 36. Moreover, we are cognizant that sexual penetration is not limited to an intrusion, however slight, of the vagina; the female sex organ also includes the labia majora and the labia minora. *People v. W.T.*, 255 Ill. App. 3d 335, 347 (1994); see *People v.*

*Gonzalez*, 2019 IL App (1st) 152760, ¶ 46 (affirming the jury's finding of an act of sexual penetration where one victim circled the labia majora on a diagram to identify where the defendant was " 'rubbing and pressing down' ").

¶ 72    At trial, R.M. repeatedly testified that, when defendant touched her with his hand, he touched her *inside* her vaginal area. She testified that, beginning at the Sheridan residence, defendant used his hand to touch her under her clothing. He touched her "[i]nside and outside," and she described the touching as painful.

¶ 73    Turning to the first Sycamore residence, R.M. testified that, when she and defendant were on his bed, he touched "inside" her vaginal area. He did this more than five times. She testified that, when they were in the living room, she would sit on his lap on the couch. He would put his hand down her pants and "go inside" her vaginal area. She sometimes jerked away because she was in pain. He did this several times. She also testified that, when they were in the basement, she would sit in his lap and he would put his hand down her pants and touch her inside her vaginal area. This occurred more than five times.

¶ 74    Finally, R.M. testified that defendant touched her inside her vaginal area more than five times at the second Sycamore residence. The touching occurred in his room and in the living room.

¶ 75    R.M.'s testimony was sufficient for a rational jury to find that defendant committed acts of sexual penetration and to convict defendant of predatory criminal sexual assault of a child. Moreover, defendant's statements do not contradict that sexual penetration occurred. Rather, his statements were that he rubbed around and applied pressure to R.M.'s vagina. Those statements alone would have been sufficient for a jury to have found sexual penetration (see *supra* ¶ 71), but those statements were not alone in this case. R.M.'s testimony consistently described an intrusion of defendant's hand into her vaginal area, and thus there was no reasonable probability that an

instruction for aggravated criminal sexual abuse would have resulted in a different outcome. Accordingly, defendant did not establish that his trial counsel was ineffective and the trial court did not abuse its discretion in denying defendant's motion for a new trial on that basis.

¶ 76                    III. CONCLUSION

¶ 77    For the reasons stated, we affirm the judgment of the De Kalb County circuit court.

¶ 78    Affirmed.

## No. 2-19-0017

| | |
|---|---|
| **Cite as:** | *People v. Janusz*, 2020 IL App (2d) 190017 |
| **Decision Under Review:** | Appeal from the Circuit Court of De Kalb County, No. 14-CF-575; the Hon. Philip G. Montgomery, Judge, presiding. |
| **Attorneys for Appellant:** | Stephen L. Richards, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Richard D. Amato, State's Attorney, of Sycamore (Patrick Delfino, Edward R. Psenicka, and Richard S. London, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |