2021 IL App (2d) 190226-U
No. 2-19-0226
Order filed April 26, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* the COMMITMENT OF DONALD A. LEHN, | ) ) ) ) ) | Appeal from the Circuit Court of Lake County. <br><br> No. 07-MR-1400 |
| (People of the State of Illinois, Petitioner-Appellee v. Donald A. Lehn, Respondent-Appellant). | ) ) ) ) | Honorable Veronica M. O'Malley, Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Justices Zenoff and Brennan concurred in the judgment.

**ORDER**

¶ 1  *Held*: The trial court properly rejected respondent's claim that counsel was ineffective and did not abuse its discretion in denying respondent's motion to discharge counsel. The trial court also correctly determined that there was no probable cause to hold an evidentiary hearing on the issue of whether respondent's condition had so changed since his last reexamination that he was no longer a sexually violent person.

¶ 2  Respondent, Donald A. Lehn, appeals the judgments of the circuit court of Lake County that his counsel was not ineffective for failing to petition for conditional release or request the appointment of an independent evaluator, for denying respondent's motion to discharge counsel, and for determining that no probable cause existed to hold an evidentiary hearing on whether his

condition had so changed since his last reexamination that he was no longer a sexually violent person (SVP). We affirm.

¶ 3                                    I. BACKGROUND

¶ 4    We summarize the relevant facts appearing in the record on appeal. In 1991, while respondent was living in Maryland, he committed conduct that led him, in 1996, to be charged in Maryland with the offenses of child pornography, child abuse, and sexual misconduct with an underage child. In August and September 1995, respondent was charged in Illinois with the aggravated criminal sexual assaults of two victims under the age of 13, child pornography, and aggravated criminal sexual abuse. In November 1995, respondent pleaded guilty to the Illinois offenses and received an aggregate 25-year term of imprisonment. In 2004, respondent was released to Maryland to face the charges stemming from his 1991-1992 conduct. In January 2005, respondent pleaded guilty to one count of "sex offense/third degree, under age" and one count of child pornography and was sentenced to three-year concurrent terms of imprisonment, which he served in Illinois.

¶ 5    On October 25, 2007, less than a week before respondent's anticipated release date, the State filed a petition to have him committed as an SVP under the Sexually Violent Persons Commitment Act (Act) (725 ILCS 207/1 *et seq.* (West 2006)). On August 27, 2008, respondent admitted that he was an SVP. On June 18, 2009, following a dispositional hearing, the trial court ordered that respondent be committed to the Department of Human Services (Department) for treatment and control in the Department's treatment and detention facility until he is no longer an SVP.

¶ 6      Following this commitment, respondent has undergone yearly reexaminations pursuant to section 55 of the Act (725 ILCS 207/55 (West 2018)).  Dr. David Suire has performed these annual reexaminations.   In his annual reexamination reports, Suire has consistently concluded that respondent remains an SVP who is unsuitable for conditional release based on respondent's lack of progress in his treatment.  In addition to the annual reexaminations, the State filed annual motions for a finding of no probable cause based on the annual reexamination.  These motions were often continued by the parties' agreement and tended to be resolved toward the end of each year.  The trial court uniformly found no probable cause to warrant an evidentiary hearing on the issue of whether respondent remained an SVP.

¶ 7      Relevant to this appeal, beginning in 2010, Judge Christopher R. Stride presided over this case.  In January 2017, the State filed a motion for a finding of no probable cause to hold an evidentiary hearing based on the December 2016 reexamination of respondent.  The matter was continued by agreement several times.  While the motion on the December 2016 reexamination remained pending, on August 2, 2017, respondent underwent a polygraph examination as part of his ongoing treatment.  Respondent passed the polygraph examination, meaning that he exhibited no signs that he was responding deceptively.  Specifically, respondent answered "no" to the questions: "Have you ever inserted your penis into another person's body for any reason?" and "Have you inserted your penis into any person's body for a sexual reason ever?"

¶ 8      On August 23, 2017, the State's motion for status on the December 2016 reexamination finally advanced to hearing.  During that hearing, respondent informed the trial court that he had taken a polygraph examination and passed it.  The State interjected, trying to keep the hearing on course to resolve the motion for status on the December 2016 reexamination.  The State noted that

the 2017 reexamination was upcoming, and the results of the polygraph would be addressed in Suire's 2017 reexamination report. The court agreed with the State that postponing the consideration of the 2016 reexamination because of the polygraph was not warranted, and it determined that consideration of the August 2017 polygraph examination was not yet ripe. The court entered an order determining that, based on its review of the 2016 reexamination report, there was no probable cause to warrant an evidentiary hearing to determine whether respondent was still an SVP and continued respondent's commitment to the Department's treatment and detention facility until it ordered otherwise.

¶ 9    On November 29, 2017, respondent filed a motion requesting a copy of the August 2, 2017, polygraph examination. While it appears that a hearing was held on November 29, 2017, no transcript of that hearing appears in the record.

¶ 10    In October and December 2017, Suire conducted his annual reexamination, and on December 7, 2017, Suire created his 2017 reexamination report.[1] In it, Suire discussed the results of the August 2017 polygraph examination. Despite respondent's successful result in the

_____

[1] We note that the report included in the record has significant legibility issues. The photocopy of the report becomes dimmer, with the text in each line dimming in vertical streaks running up and down the page. These problems with the reproduction render the final 10 pages of the report, at best, difficult to decipher and, of these, the final 6 pages of the substantive analysis are largely unintelligible, with only fragments of words and few complete words on each line being legible.

polygraph, Suire opined that respondent's condition had not significantly changed and that he remained an SVP unsuitable for conditional release.

¶ 11    On January 17, 2018, the parties appeared for what the State termed to be status on the State's motion for a finding of no probable cause to hold an evidentiary hearing based on the December 2017 reexamination report. At the hearing, the State noted it had attempted to file its motion, but the new electronic filing requirements had frustrated its efforts. The motion was properly filed the next day. Also at that hearing, respondent, himself, interjected that he wished to file a motion to strike the State's motion because he believed the personnel at the treatment and detention facility had engaged in improper conduct. The trial court cautioned respondent to communicate either in writing or through counsel. After a consultation, respondent's counsel informed the trial court that he would be filing a motion to obtain the unedited results of the August 2017 polygraph examination because "[t]hey" had "apparently doctored the reports."

¶ 12    For the March 21, 2018, and April 18, 2018, hearings, respondent sent packets to the court, State, and his own counsel, which were noted on the record. In each hearing, respondent was cautioned to communicate to the court through his attorney. Respondent personally explained that the papers delivered before the April 18, 2018, hearing had been sent out before the March hearing. At the April 18, 2018, hearing, respondent personally stated that he wished to file a motion to strike and a discovery request, both related to the August 2017 polygraph examination.

¶ 13    On May 2, 2018, a substitute judge filled in for the absent Judge Stride. She held a hearing and suggested passing the matter to a later date so Judge Stride, who had familiarity with the case, could consider the State's motion for no probable cause based on the December 2017 reexamination. Despite the judge's indication that she would not provide a substantive ruling,

respondent, himself, once again raised his concerns about the August 2017 polygraph examination. Specifically, respondent personally requested that the video of the examination be obtained, and he shared his belief that two questions were omitted from the report of the results of the test. Despite the judge's insistence that "there's nothing [the trial court was] going to be able to do for [respondent at that hearing]," respondent continued to press for a copy of a videotape of the August 2017 polygraph examination.

¶ 14    On June 13, 2018, the matter was once again before Judge Stride. Respondent's counsel verbally stated that he would adopt respondent's *pro se* motion to strike. The trial court reviewed the submission and noted that the *pro se* motion did not conform to the local rules. The court suggested that, if counsel were going to adopt respondent's motion, it would need to be revised to comport with the local rules. Counsel agreed to revise respondent's *pro se* motion. The court also expressed concern that the December 2017 motion for no probable cause had not yet been addressed and urged the parties "to start moving these things along." Respondent, himself, once again complained that his counsel had not yet secured a video recording of his August 2017 polygraph examination and alleged that the report differed from the examination. Respondent also suggested that one of the omitted questions from the report, but included in his actual polygraph examination, concerned whether respondent had ever lied to his treatment team. According to respondent, Suire's evaluation (presumably the December 2017 reexamination report currently pending before the court) was "full of accusations that the reason [respondent was] having problems in treatment [was] that [he had] been constantly lying." The court preempted further discussion on the issue by noting that nothing had been filed to formally address respondent's

concerns and suggesting that it was more properly a matter for counsel, after consultation with respondent, to present.

¶ 15    On November 6, 2018, Suire conducted his annual reexamination of respondent. He completed his report in due course; the motion for no probable cause based on the December 2017 reexamination remained pending.

¶ 16    The case was eventually reassigned to Judge Veronica M. O'Malley. At a November 16, 2018, hearing, the trial court recognized that there had been a bit of an administrative SNAFU, but that Judge O'Malley would take over the case at that time. The parties discussed the State's intention to file respondent's annual reexamination report, likely around the time of the next in-court hearing. At the hearing, respondent, himself, stated: "There is an issue I've been trying to get addressed. I asked [my counsel] to file a motion to strike and he hasn't. I will accept his advice, but I still would like to bring this issue to the Court because it's very troubling to me." The court declined to address respondent's concerns at that time, because it needed to become familiar with the file and was concerned that respondent's remarks could potentially subject him to legal jeopardy or otherwise prejudice him in the future.

¶ 17    On December 6, 2018, Suire completed his report based on his reexamination of respondent. On December 10, 2018, the State filed its motion for no probable cause based on Suire's December 2018 reexamination report; the report was filed at the same time as the motion.

¶ 18    Respondent's December 2018 reexamination report follows the template established by all of the other reexamination reports appearing in the record. It presents a soup-to-nuts overview of respondent's issues, from his intake into the Department's secure treatment facility, through his offenses, and finally, a focus on the progress since the previous report. The first 11 pages of the

report essentially repeat the preliminary information included in every previous report. As is relevant here, in discussing respondent's entry to treatment evaluation, the report repeats that "[respondent], overall, was noted to have responded to test questions with questionable honesty and some caution was felt to be necessary in interpreting these results." It appears that respondent has focused on this passage in his complaints about Suire casting him as dishonest in his reexamination reports, and this relates to his contention that the questions about whether he had been dishonest with his treatment team were omitted from the polygraph examination report. However, we note that the passage appears in the "Entry to Treatment Evaluation" section of each of the reexamination reports included in the record and was not repeated elsewhere in the reports.

¶ 19    The report covers respondent's sexual offense history, in which he admitted to victimizing as many as 30 children, ranging in age from two weeks to 10 years old. At his intake into the Department's treatment program (the entry to treatment evaluation), respondent listed only 25 victims, predominantly male, but some female children. The report also recounted the offenses with which respondent was charged, including the Illinois charges against his nephews and the Maryland child pornography cases.

¶ 20    The report also recounts respondent's treatment and adjustment to the Department's treatment regime, beginning with a brief mention of initial treatment plan and then moving to the current updated master treatment plan. The plan consists of a five-phase program conducted in the treatment and detention facility. As of the 2018 report, respondent remained in phase two of the five phases, with phase two being the first true treatment phase (phase one was assessment), and it focused on the patient's ability to accept responsibility for his or her behavior. Suire noted that respondent appeared to be making progress in phase two and had begun to demonstrate more

positive ways of interacting with others than in previous reports. However, respondent's progress was also limited by his focusing on what he perceived to be past wrongs by others and a tendency to blame others for his difficulties rather than accepting his personal responsibility in those difficulties.

¶ 21    Overall, regarding respondent's treatment progress, Suire noted that respondent continued to persist with many of the issues impeding his progress in his interpersonal interactions, but he also appeared to be making progress in effectively addressing them. Particularly, Suire noted that respondent had been making strides in the group therapy treatment which suggested that "he may now be able to progress forward to other treatment phases."

¶ 22    Next, Suire provided a summary of his annual reexamination. Suire noted that respondent's psychological makeup (respondent had been diagnosed with pedophilic disorder and "other specified personality disorder" with histrionic, borderline, and narcissistic traits) impeded his therapy, particularly because respondent seemed unwilling to accept feedback from persons he believed to be less intelligent than he. In addition, these conditions exacerbated his pedophilic urges and hindered respondent's ability to fully grasp the extent and nature of the changes he needed to make to avoid future acts of sexual offending.

¶ 23    As part of the reexamination process, Suire used actuarial assessment tools, including the STATIC-99 R, which was designed to estimate the likelihood of recidivism for sexual offenders. In his assessment, Suire noted that respondent scored in the average range and further observed that the tool is supposed to better reflect the effects of aging on a subject's risk to reoffend. Suire further identified empirical risk factors present that were not included in the actuarial assessment tools. In particular, Suire identified the following factors that enhanced his risk to reoffend: (1)

sexual interest in children, (2) any personality disorder, (3) identification with children, (4) attitudes tolerant of sex crimes, (5) physical abuse (self-reported), and (6) child molester attitudes. Suire determined that respondent exhibited all the identified factors and, based on the actuarial assessment tools and considering the identified empirical risk factors, Suire concluded that, "in spite of his average actuarial risk scores, [respondent was at] substantial risk for sexual re-offense."

¶ 24　Suire also discussed the applicable "protective factors" that could reduce a subject's risk of recidivism. The factors included participation and completion of specific sex offender and other relevant treatment, medical condition, and age. Suire noted that respondent remained at the early stages of his treatment "and lack[ed] the skills and insight to adequately manage or recognize high risk situations and thinking." Progress in treatment did not constitute a protective factor. Respondent also had no medical conditions that would constitute any protective factors. Finally, considering several sources that specifically considered the effects of aging on recidivism, Suire concluded that respondent's age (56 years old at the time of the report), other than as already accounted for in the actuarial assessment tools, did not constitute a protective factor.

¶ 25　Suire provided his overall conclusion and recommendation for respondent's disposition based on the report. He was cautiously optimistic that respondent was beginning to show progress in his treatment, but still had "not made sufficient treatment progress to be safely managed and effectively treated in the community," so he could not recommend conditional release. Likewise, his risk analysis "indicated he remains [at] a substantial risk of sexual re-offense," and he lacked "adequate protective factors to conclude that this risk should be reduced below that of 'substantially probable' [to reoffend]." Suire determined that respondent remained an SVP as defined under the Act.

¶ 26    On December 14, 2018, the matter was before the trial court for hearing. Respondent's counsel was not present due to illness. After the court postponed substantive action to an agreed date, respondent interjected and requested the court to consider "the problem I'm having with [counsel]." Specifically, respondent complained that, "[o]ver the course of the past years, I've sent [counsel] letters asking him to obtain something, a videotape of a polygraph examination and—." The court interrupted respondent and recommended that he speak with counsel. The court directed the State to apprise respondent's counsel that respondent had once again raised the issue of obtaining a video recording of the August 2017 polygraph examination and to stress the court's expectation that counsel would follow up with respondent.

¶ 27    On January 11, 2019, respondent's counsel was unavailable. The trial court entered an order setting the State's motion for no probable cause to an agreed date. The record does not indicate which motion for no probable cause was to be considered. Further, while the record is not entirely clear, it appears that respondent's presence was ordered for that date, and we infer that he was present, but no transcript of the proceeding appears in the record.

¶ 28    On January 18, 2019, respondent filed a *pro se* claim of ineffective assistance of counsel. Respondent contended that his counsel had not acted on his repeated requests to obtain a recording of the August 2017 polygraph. In the ineffectiveness claim, respondent asserted the lack of the polygraph negatively impacted the trial court's ability to provide an "*honest* review *** of [respondent's] continued commitment." (Emphasis in original.) In support of that assertion, respondent attached what he designated as a draft motion to strike the December 2017 reexamination report. In the draft motion to strike, respondent asserted that the report of the August 2017 polygraph examination omitted the following questions: (1) " 'Have you ever lied to

your treatment team?' " and (2) " 'Have you ever lied to get out of serious trouble?' (Defined as something that would result in going to jail.)" Respondent asserted that he answered "no" to both omitted questions. Respondent asserted that this was prejudicial, explaining that, because the trial court's assessment depended on accurate evaluations, the failure to correct the statements about the polygraph examination would "poison" any report mentioning it, including future evaluations, each of which would build upon the previous reports.

¶ 29    On February 15, 2019, the matter advanced to hearing. The trial court first addressed respondent's charge of ineffective assistance, which it construed to be a motion to discharge counsel. The court asked whether respondent had any argument beyond what he had written. Respondent amplified that he was frustrated that counsel had not obtained any sort of recording of the August 2017 polygraph examination, and he explained that a recording would show that the examination report omitted the two questions dealing about his honesty with his treatment team. Respondent further reiterated his belief that the treatment team was "doctoring the evidence that they [were] presenting to [the] state evaluator."

¶ 30    The trial court asked respondent's counsel for his input. Counsel stated that the matter was not quite as simple as respondent believed, because the polygraph examiner lived in Hawaii. Counsel had attempted to contact the examiner, but was unsuccessful, as the examiner had not returned his calls. Counsel further indicated that he had filed a notice on the State about requesting the information, but respondent's charge of ineffective assistance intervened.

¶ 31    The trial court then invited the State's response. The State first questioned the relevance of the 2017 polygraph examination, as the parties were before the court on the issue of the State's the motion for no probable cause arising from the respondent's December 2018 reexamination.

Next, the State noted that the fact that respondent signed a consent to allow recording of the polygraph examination did not imply that a recording was actually made or even existed. Finally, the State stipulated that respondent passed the polygraph, and expressed the belief that respondent's passage of the polygraph examination should have resulted in his advancement to the next phase of treatment.

¶ 32    Respondent replied to the State's contentions. Respondent maintained that the omission of the honesty questions was relevant because, according to respondent, in his 2012 dispositional hearing, Suire stated that respondent needed to pass the polygraph.

¶ 33    The trial court denied respondent's motion to discharge counsel. The court noted that it had reviewed respondent's file, considered the written and oral arguments, and emphasized that, while previously, respondent had not passed a polygraph examination, he had passed the 2017 polygraph examination, and this was acknowledged and relied upon in the 2018 reevaluation report. In addition, the court denied respondent's request for production of the recording of the 2017 polygraph examination on the basis that the polygraph examiner did not work for the State and resided in Hawaii and was thus not readily available or easily reached.

¶ 34    The trial court moved on to consider the State's motion for no probable cause based on Suire's 2018 reexamination report. Respondent's counsel stated he was ready to proceed, but again noted that, when respondent filed his charge of ineffective representation, counsel had ceased working on the matter until after the charge had been resolved. Counsel acknowledged that he had reviewed Suire's 2018 reexamination report and highlighted its mention that respondent had passed the polygraph examination. The State argued that respondent was still in the relatively early phases of treatment, either phase two or just beginning phase three, and in Suire's opinion,

respondent remained a substantial risk to reoffend and had not yet made sufficient progress in treatment to warrant conditional release.

¶ 35    The trial court granted the State's motion for no probable cause. The court recounted that it had examined respondent's file, and all the previous annual reexamination reports, along with the records of respondent's offenses, both charged and uncharged conduct. The court noted that respondent had made some progress in his treatment and was moving forward. The court observed that respondent had passed the polygraph examination. Despite the progress, the court concluded that respondent had not met his burden of demonstrating probable cause to hold an evidentiary hearing, and that respondent had not yet made sufficient progress in his treatment to qualify for conditional release or that would demonstrate that his condition had changed such that he would no longer be deemed an SVP. Respondent timely appeals.

¶ 36                                    II. ANALYSIS

¶ 37    On appeal, respondent argues that his counsel provided ineffective assistance by failing to petition for conditional release and by failing to request the appointment of an independent evaluator. Relatedly, respondent argues that the trial court erred in denying his motion to discharge his counsel. Finally, respondent argues that the trial court erred in granting the State's motion for no probable cause. We consider respondent's contentions in turn, but before beginning, we review the salient portions of the Act pertinent to respondent's contentions.

¶ 38                    A. Overview of Applicable Portions of the Act

¶ 39    Respondent does not challenge the propriety of his original involuntary civil commitment under the Act. Thus, we need not consider how an SVP comes to be committed. As is pertinent to respondent's situation, the Act mandates an indefinite commitment to the Department's control,

care, and treatment "until such time as the person is no longer a sexually violent person." 725 ILCS 207/40(a) (West 2018). In order to monitor this indefinite commitment, the Department is required to evaluate his mental condition at least annually. *Id.* § 55(a). The purpose of the annual reexamination is to determine "whether: (1) the person has made sufficient progress in treatment to be conditionally released and (2) the person's condition has so changed since the most recent periodic reexamination *** that he or she is no longer a sexually violent person." *Id.*

¶ 40    A person committed under the Act may challenge his continued commitment through a petition for discharge or a petition for conditional release. *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 50. There are two avenues for a committed person to petition for discharge. 725 ILCS 207/65 (West 2018). In the first, the Department has determined the committed person is no longer an SVP and has authorized him or her to file a petition for discharge. *Id.* § 65(a).

¶ 41    The second avenue is available after the committed person has undergone a periodic reexamination. *Id.* § 65(b)(1). The person may file a petition for discharge without the Department's approval and the court must hold a probable cause hearing to determine whether facts exist to believe that the committed person's condition has so changed that he or she is no longer an SVP. *Id.* If the committed person does not file a petition for discharge but does not waive his or her right to petition for discharge, then the court shall hold a probable cause hearing consisting of a review of the reexamination reports and argument on behalf of the parties. *Id.* If probable cause exists to believe that the person's condition has changed, then the matter will advance to a full-blown hearing (either by the court or before a jury) at which the State must prove by clear and convincing evidence that the person remains an SVP. *Id.* § 65(b)(2). If the State fails to meet its burden of proof, then the person shall be discharged from the Department's custody or

supervision; if the State meets its burden of proof, the court has may consider whether to modify the person's existing commitment order. *Id.* § 65(b)(3).

¶ 42     The committed person may also petition the trial court to modify the commitment order by authorizing conditional release. *Stanbridge*, 2012 IL 112337, ¶ 54. As with petitions for discharge, the committed person may receive a recommendation for conditional discharge by the director of the facility or by the Department, or the committed person him- or herself may file a petition for conditional discharge. 725 ILCS 207/60(a), (b) (West 2018). As with the petition for discharge, the court must first hold a probable cause hearing to determine whether the person has made sufficient progress in treatment to the point where he or she is no longer substantially probable to engage in acts of sexual violence if on conditional release, and upon a favorable probable cause hearing, the matter advances to an evidentiary hearing on the issue. *Id.* § 60(c). The person will be granted conditional release unless at the evidentiary hearing, the State shows by clear and convincing evidence that the person has not made sufficient progress to be conditionally released. *Id.* § 60(d). With these provisions in mind, we turn to respondent's substantive contentions.

¶ 43                              B. Ineffective Assistance of Counsel

¶ 44     Respondent first argues that his trial counsel was ineffective. Although the Act is civil, not criminal, in nature, a person committed under the auspices of the Act has a right to effective assistance of counsel and all that term of art entails. *Id.* § 25(c)(1); *People v. Rainey*, 325 Ill. App. 3d 573, 585-86 (2001) (the Act guarantees a respondent the effective assistance of counsel pursuant to *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). Ineffective assistance of counsel is ascertained under the familiar *Strickland* standard. *In re Commitment of Dodge*, 2013 IL App

(1st) 113603, ¶ 20. The claimant must prove that counsel's conduct fell below an objective standard of reasonableness, and a reasonable probability exists that, but for counsel's unprofessional conduct, the outcome would have been different. *Id.* To prevail on the claim, the claimant must prove both prongs of the *Strickland* standard. *Id.* Finally, we employ a bifurcated standard to review a claim of ineffective assistance passed upon in the trial court: the trial court's factual findings are reviewed deferentially, while the ultimate issue of whether counsel was ineffective is reviewed *de novo*. *People v. Janusz*, 2020 IL App (2d) 190017, ¶ 68.

¶ 45 Respondent specifically argues that counsel was ineffective for failing to file a petition for conditional discharge and for failing to file a petition to appoint an independent evaluator. As an initial matter, we must confess to being nonplussed by respondent's argument. For example, respondent begins his argument by proclaiming that "[t]his appeal started with the December 7, 2017[,] Sexually Violent Persons Commitment Act Psychological Re-Examination [citation] highlighted in [the] Motion for Status on December 2017 Re-Examination report." Respondent immediately contradicts this position by stating that "[t]rial counsel represented [respondent] on this motion arguably starting on August 23, 2017, during the probable cause hearing relative to the December 2016 re-examination report." The sentences opening respondent's substantive argument, when read together, are nonsensical: counsel clearly cannot have represented respondent's interests relative to the December 2017 reexamination before that examination even took place. This loose conception of chronology and causation appears to plague the balance of respondent's argument on appeal regarding ineffective assistance and impedes both understanding and cogent and effective response.

¶ 46 With that said, respondent's argument on appeal is reasonably specific at root: respondent

contends that trial counsel was ineffective for failing to petition for conditional discharge. This is a straightforward inquiry, based on the requirements of the statute and the *Strickland* standard. Essentially, the question is whether the failure to file a petition for conditional discharge fell below objective standards of professionalism, and whether the failure prejudiced respondent. *Dodge*, 2013 IL App (1st) 113603, ¶ 20. An ineffective-assistance claim may be resolved on the *Strickland* prejudice prong alone. *People v. Patterson*, 2014 IL 115102, ¶ 87. Prejudice, in this circumstance, would be whether respondent could demonstrate probable cause that he has made sufficient progress in treatment to the point where he is no longer substantially probable to engage in acts of sexual violence if on conditional release. 725 ILCS 207/60(c) (West 2018). Probable cause in this context means that a respondent need only establish a plausible account on each of the required elements to assure the court that there is a substantial basis for the petition. *In re Commitment of Smego*, 2017 IL App (2d) 160335, ¶ 23. Further, the plausible account has been defined as a change in circumstances sufficient to demonstrate the required elements. *Id.* ¶ 25. For conditional release, this translates to evidence of sufficient progress in treatment and evidence that respondent is no longer substantially probable to engage in acts of sexual violence. 725 ILCS 207/60(c) (West 2018).

¶ 47 Respondent does not directly argue either that the record shows there is a plausible account that he has made sufficient progress in treatment or that he is no longer substantially probable to engage in acts of sexual violence. Indeed, neither the word, "prejudice," nor any synonymous formulation appears anywhere in this portion of respondent's appellate argument. The *Strickland* standard is clear: a party claiming ineffective assistance of counsel must demonstrate two elements—deficient performance *and* prejudice. *Dodge*, 2013 IL App (1st) 113603, ¶ 20. The

failure to argue a point on appeal results in forfeiture. *Kun Mook Lee v. Young Rok Lee*, 2019 IL App (2d) 180923, ¶ 24; see also Ill. S. Ct. R. 341(h)(7) (eff. May 28, 2018) ("[p]oints not argued are forfeited"). By failing to argue prejudice, respondent has forfeited the point and, thus, cannot prevail on his ineffective-assistance argument on appeal. However, forfeiture is a limitation on the parties, not on the court, and we choose to overlook respondent's forfeiture in the interest of justice given the serious nature of the liberty interest at stake. *City of Highland Park v. Bryan*, 2019 IL App (2d) 180662, ¶ 19.

¶ 48 Regarding progress in treatment, it is clear that respondent has made very little progress. Respondent was at phase two of five in his treatment, and phase two has been termed throughout the record as the first therapeutic phase of respondent's treatment. This is despite passing the August 2017 polygraph examination, the passage of which, according to the parties, usually heralds advancement to the next phase of treatment.

¶ 49 The treatment plans have remained consistent throughout respondent's commitment. For example, in 2015, respondent's master treatment plan was formulated to address the following problem areas: limited interpersonal and coping skills, deviant sexual arousal pattern, sexual dangerousness, factors complicating respondent's participation and progress in sex-offender specific treatment, lack of responsible living skills, and discharge planning. In respondent's 2016 master treatment plan, the same six problem areas were identified. The review of the 2017 and 2018 master treatment plans were presented differently. The overview of the 2017 master treatment plan first noted that respondent passed the 2017 polygraph examination. However, it also noted that respondent was "struggl[ing] to make progress toward core treatment objectives," such as resentment toward others, blaming others for his problems, and avoiding personal

responsibility (all of which suggest they pertain to interpersonal and coping skills and factors complicating treatment progress), and that he remained in the phase two treatment regime. The 2018 master treatment plan review again noted the factors that inhibited respondent's ability to progress, but also noted that he had made progress in relation to some of the issues, like becoming less argumentative and more receptive to feedback. As of the 2018 review, he still remained in phase two of the five-phase program.

¶ 50    Likewise, respondent's diagnoses have remained consistent. In the 2016, 2017, and 2018 reexamination reports, Suire opined, to a reasonable degree of psychological certainty, that respondent met the criteria for pedophilic disorder, sexually attracted to both genders, exclusive type, and other specified personality disorder, with histrionic, borderline, and narcissistic traits. For each of the noted reexamination reports (as well as the previous ones in the record), Suire reached his opinion through a combination of reviewing respondent's records and performing a clinical interview. Thus, despite spending a decade in treatment, respondent has made no progress in the treatment of his mental disorders.

¶ 51    Likewise, respondent's risk of committing acts of sexual violence or recidivism has remained consistent across the noted reports of reexamination (as well as the earlier ones we do not focus on). While respondent's results on the actuarial instruments Suire administered suggested that he was of moderate to average risk, respondent exhibited many other empirical risk factors, such as sexual interest in children, personality disorder, identification with children, attitudes tolerant of sex crimes, self-reported physical abuse, and child molester attitudes that enhanced his risk of reoffending. Likewise, respondent's lack of progress in treatment did not offer any protective factors to counterbalance respondent's risk. Suire concluded that, on balance

and considering the results of the actuarial instruments, the empirical factors enhancing the risk, and the lack of protective factors, respondent was a substantial risk for sexual reoffense.

¶ 52    Based on our review of the record of respondent's periodic reexamination, we conclude that respondent has not presented a plausible account that he has made sufficient progress in treatment. He remains in phase two of five, despite what often serves to signal readiness to advance to the next phase, the positive result in the August 2017 polygraph examination. In addition, the lack of progress in treatment means that respondent has not made progress in dealing with his diagnosed mental disorders, and the lack of progress means respondent lacks tools to avoid sexual reoffense. Thus, respondent's record does not demonstrate any prejudice arising from trial counsel's purported failure to file a petition for conditional release. In the absence of prejudice, respondent's contention that counsel was ineffective for failing to petition for conditional release cannot stand.

¶ 53    In support of a plausible account that he had made progress in treatment, respondent focuses on the August 2017 polygraph examination. This, however, is a red herring. While we do not comment on whether respondent's ire at his counsel's failure to obtain more information regarding any possible recording of the August 2017 polygraph examination is justified, we note that the results of the polygraph examination were considered in the legible portions of the 2017 reexamination report and in the 2018 reexamination report. In the 2017 report, Suire wrote that respondent "reported that in early August 2017 he had passed his sexual offense history polygraph." Suire further indicated that respondent believed that he would advance to the next phase in treatment, but he first needed to complete some tasks associated with describing his sexual offenses before that would happen. In the 2018 report, Suire again noted that respondent had

passed the August 2017 polygraph examination dealing with his sexual offense history. However, Suire further noted that respondent's historical and well-documented difficulties in treatment had left him in phase two of treatment. Thus, the record clearly accounts for the passage of the August 2017 polygraph examination.

¶ 54    This is further underscored by the State's stipulation in open court that respondent passed the examination. At the February 15, 2019, hearing, the State stipulated to respondent's passage of the examination, and the record indicates that the pertinent questions (whether respondent inserted his penis into another's body for any reason or for a sexual reason) were answered without a significant reaction being observed, which indicated that respondent was not being deceptive. It is difficult to imagine any further use of the polygraph examination. The record suggests that it was a therapeutic tool, one of many. Despite demonstrating a nondeceptive result, respondent did not advance in his treatment. The apparent reasons include respondent failing to complete necessary tasks related to the phase two treatment. In the 2017 reexamination report, respondent stated that he had to complete a proposal related to the completion of his phase two treatment before he was advanced to phase three. The 2018 reexamination report noted that respondent "was working to complete his Phase II proposal." This indicates that, while respondent had passed the hurdle represented by the passage of the August 2017 polygraph examination, at the time of the 2018 reexamination, he continued to be "working to complete" a significant remaining task.

¶ 55    Despite respondent's personal focus on the August 2017 polygraph examination result, the record rebuts respondent's inference that the test was the be-all and end-all of his phase two treatment. Respondent did not advanced to phase three treatment because, even more than a year later, he was "working to complete" tasks related to concluding his treatment in phase two to

enable him to advance to phase three. In addition, all of the reexamination reports in the record indicated that respondent's historical barriers to progress, such as his combativeness and his unwillingness to accept and internalize feedback from others, remained in full force and hampered his ability to progress in treatment. In short, while we acknowledge that the passage of the 2017 polygraph examination was significant, it was a milestone in respondent's treatment and not the end of journey. Respondent's seeming singular focus on the polygraph appears to illustrate some of the barriers consistently reported to impede respondent's progress, namely, his persistent grievances with past perceived injustices and slights, his inability to accept personal responsibility, and his blame of external agents for his current difficulties. The polygraph result is, ultimately, a red herring in our review.

¶ 56 We also observe that respondent refuses to accept Suire's incorporation and analysis of the 2017 polygraph examination result. Respondent claims that Suire did not consider the polygraph examination in the 2017 and 2018 reexamination reports, because the polygraph examination report was not included in the "Sources of Information" section of each report. However, the polygraph examination was a portion of his treatment at the Department's treatment and detention facility, and Suire considered the progress notes from respondent's treatment there. Thus, the reports seem to belie respondent's claim. Further, when the State stipulated to the polygraph results at the February 15, 2019, hearing, the State represented that it had spoken to the clinical director of the treatment and detention facility, and the director acknowledged that respondent had passed the August 2017 polygraph examination. It is therefore clear that the polygraph examination would be included in respondent's treatment notes. Thus, because respondent's treatment team was aware of respondent's positive result and necessarily incorporated this result

into respondent's treatment, the fact that Suire listed respondent's progress notes as a source of information gives rise to the reasonable inference that Suire considered the result in his 2017 and 2018 reexamination reports, and this wholly rebuts respondent's contention.

¶ 57    Likewise, respondent's conclusion, that "[Suire] didn't [*sic*] believe [respondent] had in fact passed the [polygraph] test," is unfounded and based on questionable logic. Because Suire apparently quoted respondent in a passage in his report ("[respondent] reported that he 'passed' a polygraph in August 2017 and thereafter had returned to Disclosure group") and did not expressly include the polygraph as a source for his report, respondent concludes that Suire doubted that respondent passed the test. The conclusion does not follow. Suire relied on the facility's treatment notes, which inferentially included the polygraph result, and the quotation marks in the sentence beginning with "[respondent] reported" suggest that Suire was directly quoting respondent's words to him, and the quotation marks did not indicate a signal of doubt as to the veracity of the term " 'passed.' " We therefore reject respondent's claim.

¶ 58    Next, respondent asserted that counsel "was obligated to obtain the unaltered polygraph examination from August 2, 2017." As noted, the polygraph is a red herring. Further, while respondent believed the report had been altered, the report was specifically about respondent's sexual offense history, and questions about his honesty to his treatment team are not directly related to that specific topic and, in fact, are subsumed into the polygraph examination itself, because passage indicates that respondent was not being deceptive with his team. Thus, respondent's complaint is not relevant to the (nonexistent) argument that respondent was prejudiced by trial counsel's failure to petition for conditional release.

¶ 59    Moreover, respondent continues this line of argument with the assumption that the

polygraph result was only relevant to the 2017 reexamination. This line of reasoning is rebutted in the record and is also expressly rebutted in pertinent authority. First, the result of the 2017 polygraph examination was clearly included and considered in the 2018 reexamination report, thus belying respondent's contention that it was only relevant to the 2017 reexamination report. Second, and more importantly, respondent's contention is rebutted by pertinent authority. In *In re Commitment of Rendon*, 2017 IL App (1st) 153201, ¶ 23, the court expressly rejected the respondent's contention that only the roughly one-year period between previous and current annual reexamination reviews could be considered, holding that "review of a reexamination report does not preclude consideration of a respondent's full mental health and sexual history or relevant historical facts." Thus, respondent's premise, that the 2017 polygraph report was only relevant to consideration of the 2017 reexamination report, is manifestly incorrect. We reject respondent's contention.

¶ 60 Respondent next makes the relevant argument that certain aspects of his treatment should have supported a finding of sufficient progress. Specifically, respondent notes that he is taking medication that suppresses his sexual urges and had recorded no noticeable reactions during penile plethysmograph testing. Suire expressly accounted for these factors in the reexamination reports, including the 2018 reexamination report at issue now. However, the highlighted medication and testing results show respondent has made some progress, but the operative question here is *sufficient* progress in treatment. See 725 ILCS 207/60(c) (West 2018) (the core issue concerning whether a respondent is suitable for conditional release is whether the committee has made sufficient progress in treatment to believe he or she is no longer substantially probable to engage in acts of sexual violence). Suire's analysis included the medication and testing results, but he

nevertheless concluded that respondent remained substantially probable to reoffend. We reject respondent's contention.

¶ 61    For final measure, respondent complains about trial counsel's actions at the February 15, 2019, hearing. Respondent highlights counsel's statement that he "ceased doing anything with respect to the case" upon receiving respondent's *pro se* charge of ineffective assistance. While respondent assigns this as another reason why counsel was ineffective, he does not directly argue that he was prejudiced as a result, and he only obliquely argues that counsel could have done more, such as objecting to proceeding to hearing on the 2018 reexamination report instead of proceeding on issues related to the 2017 polygraph examination. For the reasons above, however, the 2017 polygraph is of only limited relevance, especially because the State stipulated that respondent passed the examination. Moreover, we note that counsel informed the court that he had read the report and he highlighted the salient points in favor of a finding of probable cause to hold an evidentiary hearing, namely, that respondent passed the polygraph examination and was progressing in treatment. Counsel thus appears to have worked with the information present in the record. See *Dodge*, 2013 IL App (1st) 113603, ¶ 20 (counsel is not required to manufacture facts to support a better argument or defense). A petition for conditional release would have been a fruitless endeavor and counsel is not required to undertake fruitless efforts to demonstrate effective representation. *People v. Williams*, 147 Ill. 2d 173, 238-39 (1991). We therefore reject respondent's arguments on this point.

¶ 62                          C. Independent Evaluator

¶ 63    Next, respondent argues that trial counsel was ineffective for failing to request the appointment of an independent evaluator. Respondent's argument on this point is again plagued

by the critical shortcoming of not addressing prejudice, but for the reasons above, despite the resulting forfeiture of this deficiency, we choose to address the contention.

¶ 64 Respondent's argument is largely repetitive of the argument regarding conditional release. The only new wrinkle added to the argument is that respondent's polygraph result would have supported the appointment of an independent evaluator. We extensively discussed how the polygraph examination was only tangentially related to respondent's arguments regarding conditional release. That has not changed. The polygraph result was one of the many aspects of respondent's treatment, and while passage represents progress, it did not suffice to advance respondent to the next phase of treatment, where there had been little change in respondent's behaviors and attitudes, and where respondent had uncompleted tasks remaining before he could graduate from the phase two treatment.

¶ 65 Moreover, the standard governing the appointment of an independent evaluator is where such would be deemed crucial to respondent's case. *People v. Botruff*, 212 Ill. 2d 166, 177 (2004). However, there is nothing in the record to suggest that an independent evaluator would have been crucial to respondent's ability to support a petition for conditional release or to support a claim of probable cause to hold an evidentiary hearing. As discussed above, the reports indicate that respondent remained in phase two of his treatment notwithstanding the polygraph result, that his diagnoses had not changed, that the respondent's own psychological barriers impeding his treatment progress had not been breached or alleviated, and that very little concrete progress had been demonstrated in the years of his treatment. "It is rational not to appoint an independent evaluator when a respondent has shown no need for one." *Id.* at 177-78. Because respondent has not demonstrated a plausible account of every element required for conditional release or discharge

(specifically, that he has made sufficient progress in treatment and is not substantially likely to engage in acts of sexual violence, or that he is no longer an SVP), he cannot demonstrate that an independent evaluator was crucial. Therefore, there is no question that counsel's failure to request an independent evaluator could not have resulted in prejudice. In the absence of prejudice, an ineffective-assistance claim based on the failure to request an independent evaluator cannot stand. Accordingly, respondent's contention necessarily fails.

¶ 66                           D. Motion to Discharge Counsel

¶ 67    Respondent next contends that the trial court erred in denying his motion to discharge trial counsel. The trial court's decision on a motion to discharge counsel will not be disturbed absent an abuse of discretion. *People v. Wanke*, 303 Ill. App. 3d 772, 782 (1999). Additionally, respondent's dissatisfaction with counsel, a poor relationship between the respondent and counsel, or their disagreement about matters of strategy and tactics, standing alone, does not constitute good cause sufficient to support the discharge of counsel. *Id.* Respondent's motion is rooted in the claim that trial counsel was ineffective (deficient performance resulting in prejudice). Above, we have determined the ineffective assistance claims to be without merit. Further, respondent has raised no other grounds that would support discharging counsel, beyond, perhaps, dissatisfaction and disagreement. As a result, we cannot say the trial court abused its discretion in denying respondent's motion to discharge counsel.

¶ 68                           E. Probable Cause Finding

¶ 69    Respondent last argues that the trial court erred in finding no probable cause to hold an evidentiary hearing based on the December 2018 reexamination report. The purpose of the hearing on the December 2018 reexamination report was to "determine whether facts exist to believe that

since the most recent periodic examination *** the condition of the committed person has so changed that he or she is no longer a sexually violent person." 725 ILCS 207/65(b)(1) (West 2018). If the court finds that probable cause exists, it must set an evidentiary hearing on the issue. 725 ILCS 207/65(b)(1) (West 2018). We review *de novo* the court's judgment on probable cause. *In re Commitment of Kirst*, 2015 IL App (2d) 140532, ¶ 49.

¶ 70 Respondent confines his argument to section 65 of the Act. Under section 65, to receive an evidentiary hearing, the trial court must find that a plausible account exists that the respondent is no longer a sexually violent person. 725 ILCS 207/65(b)(2) (West 2018); *In re Detention of Lieberman*, 2017 IL App (1st) 160962, ¶ 29. In the context of the hearing below, this means that respondent had to demonstrate a plausible account that he no longer had a mental disorder or that he was no longer dangerous to others because he no longer was substantially probable to engage in acts of sexual violence. 725 ILCS 207/5(f) (West 2018); *Lieberman*, 2017 IL App (1st) 160962, ¶ 29.

¶ 71 Respondent argues that the December 2018 reexamination report acknowledged that he had made some progress in treatment, he passed his 2017 polygraph examination, and he was taking medication that suppressed his sexual urges. Respondent further notes his personal belief that he would not reoffend if placed in a less restrictive setting, and he argues that counsel was ineffective for failing to prepare and adequately argue his plausible account at the hearing. We disagree.

¶ 72 Above, we have extensively analyzed whether counsel was ineffective and whether respondent remained substantially probable to engage in acts of sexual violence. Our analyses remain fully applicable here, and respondent presents nothing in this portion of his argument that

would serve to change or modify our determination on these issues. Accordingly, we cannot say that the trial court erred in its finding of no probable cause.

¶ 73                                III. CONCLUSION

¶ 74    For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

¶ 75    Affirmed.